No. 23-1259

IN THE
# United States Court of Appeals for the Federal Circuit

GOOGLE LLC,

*Appellant,*

*v.*

SONOS, INC.,

*Appellee.*

On Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board No. IPR2021-00964

## RESPONSE BRIEF OF
## APPELLEE SONOS, INC.

Mark S. Davies
Kufere Laing
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
1152 15th Street, NW
Washington, DC  20005

Alyssa M. Caridis
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
355 S. Grand Avenue
Suite 2700
Los Angeles, CA  90071

Elizabeth R. Moulton
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
405 Howard Street
San Francisco, CA  94105
(415) 773-5700

Parth Sagdeo
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
222 Berkeley St., Suite 2000
Boston, MA 02138

Emily W. Villano
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019

*Counsel for Appellee*

## CLAIM LANGUAGE AT ISSUE

### U.S. Patent No. 10,229,586: Claims 1-4

**1**. An audio-enabled wireless device configured for bidirectional wireless communication in a wireless mesh network, the wireless device comprising:

a wireless transceiver;

an audio output element;

a reset element; and

a controller operatively coupled to the wireless transceiver, the audio output element, and the reset element, the controller being configured to:

receive a communication packet using the wireless transceiver, the communication packet including a preamble portion, an identification portion, a data payload portion and an integrity portion;

compare at least the identification code portion of the received communication packet to a table of identifiers stored in the audio-enabled wireless device;

based on the comparison of the identification code portion of the received communication packet matching an entry in the table of identifiers stored in the audio-enabled wireless device, determine to relay the communication packet to another audio-enabled wireless device; and

relay the communication packet to the other audio-enabled wireless device.

**2.** The audio-enabled wireless device of claim 1, the controller configured to:

prior to the relay of the communication packet, listen to a radio frequency channel to determine the radio frequency channel is not in use by another device; and

transmit, via the radio frequency channel, the communication packet.

**3.** The audio-enabled wireless device of claim 2, the controller configured to:

prior to the transmission of the communication packet, determine a delay value; and

wait the determined delay value before the transmission of the communication packet.

**4.** The audio-enabled wireless device of claim 3, wherein the delay value is a random delay value.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

### CERTIFICATE OF INTEREST

**Case Number** 23-1259

**Short Case Caption** Google LLC v. Sonos, Inc.

**Filing Party/Entity** Sonos, Inc

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 07/10/2023

Signature: /s/ Elizabeth R. Moulton

Name: Elizabeth R. Moulton

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Sonos, Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| K. Patrick Herman | Bas de Blank | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

**TABLE OF CONTENTS**

**Page**

CLAIM LANGUAGE AT ISSUE..................................................................i

CERTIFICATE OF INTEREST .............................................................iii

TABLE OF AUTHORITIES.................................................................vii

STATEMENT OF RELATED CASES .....................................................x

INTRODUCTION...................................................................................1

STATEMENT OF THE ISSUES.............................................................5

STATEMENT OF THE CASE ................................................................5

    Baker and McMillin disclosed wireless mesh networks in the
early 2000s. ......................................................................................5

    Collision avoidance was a well-known technique for
managing communications in wireless mesh networks.........9

    The '586 patent claims a wireless mesh network with
collision avoidance techniques. ...........................................10

    Sonos seeks inter partes review of the '586 patent. ......................14

    The Board invalidates all challenged claims...............................17

SUMMARY OF ARGUMENT...............................................................20

STANDARD OF REVIEW....................................................................22

ARGUMENT .......................................................................................23

    I.    The Board's finding that dependent claims 3, 4, 11, 12,
and 20 are obvious over the Baker, Bruckert, and
McMillian combination is supported by substantial
evidence. ..............................................................................23

    II.    Google forfeited the argument that claims 11, 12, and
20 are patentable over the Marman/Shoemake
combination. .........................................................................35

CONCLUSION ....................................................................................40

CERTIFICATE OF COMPLIANCE

**Page(s)**

**Cases**

*Arendi S.A.R.L. v. Apple Inc.*,
832 F.3d 1355 (Fed. Cir. 2016) ...................................................... 33

*Cablz, Inc. v. Chums, Inc.*,
708 F. App'x 1006 (Fed. Cir. 2017) .................................................. 39

*Comcast Cable Commc'ns, LLC v. Promptu Sys. Corp.*,
838 F. App'x 555 (Fed. Cir. 2021) .................................................. 33

*Consol. Edison Co. of N.Y., Inc. v. NLRB*,
305 U.S. 197 (1938) ...................................................................... 22

*Consolidation Coal Co. v. United States*,
351 F.3d 1374 (Fed. Cir. 2003) ...................................................... 36

*In re Dance*,
160 F.3d 1339 (Fed. Cir. 1998) ...................................................... 30

*Dell Inc. v. Acceleron, LLC*,
884 F.3d 1364 (Fed. Cir. 2018) ................................................ 22, 38

*Driessen v. Best Buy Co.*,
No. 2022-1907, 2023 WL 2422441 (Fed. Cir. Mar. 9, 2023) .............. 22

*DSS Tech. Mgmt., Inc. v. Apple Inc.*,
885 F.3d 1367 (Fed. Cir. 2018) ................................................ 33, 34

*DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H.
Patrick Co.*,
464 F.3d 1356 (Fed. Cir. 2006) ................................................ 21, 28

*Gen. Elec. Co. v. Raytheon Techs. Corp.*,
983 F.3d 1334 (Fed. Cir. 2020) .......................................... 20, 30, 31

*Genentech, Inc. v. Hospira, Inc.*,
946 F.3d 1333 (Fed. Cir. 2020) ...................................................... 22

*In re Google Tech. Holdings LLC*,
 980 F.3d 858 (Fed. Cir. 2020) ............................................................ 36

*Great Atl. & Pac. Tea Co. v. Supermarket Equip. Corp.*,
 340 U.S. 147 (1950) ............................................................................ 23

*Innogenetics, N.V. v. Abbott Lab'ys*,
 512 F.3d 1363 (Fed. Cir. 2008) .......................................................... 31

*Intel Corp. v. Qualcomm Inc.*,
 21 F.4th 784 (Fed. Cir. 2021) ...................................................... 21, 28

*In re Jolley*,
 308 F.3d 1317 (Fed. Cir. 2002) .......................................................... 23

*KSR Int'l Co. v. Teleflex Inc.*,
 550 U.S. 398 (2007) ............................... 19, 20, 23, 24, 25, 27, 29

*Leo Pharm. Prods., Ltd. v. Rea*,
 726 F.3d 1346 (Fed. Cir. 2013) .......................................................... 23

*Meiresonne v. Google, Inc.*,
 849 F.3d 1379 (Fed. Cir. 2017) .......................................................... 22

*Metalcraft of Mayville, Inc. v. Toro Co.*,
 848 F.3d 1358 (Fed. Cir. 2017) .................................................... 31, 33

*Ruiz v. A.B. Chance Co.*,
 357 F.3d 1270 (Fed. Cir. 2004) .......................................................... 27

*Steuben Foods, Inc. v. Nestle USA, Inc.*,
 884 F.3d 1352 (Fed. Cir. 2018) .......................................................... 22

*TQ Delta, LLC v. Cisco Sys., Inc.*,
 942 F.3d 1352 (Fed. Cir. 2019) .......................................................... 33

**Statutes**

35 U.S.C. § 103 ......................................................................................... 23

**Rules and Regulations**

37 C.F.R. § 42.5(b) ...............................................................38

Office Patent Trial Practice Guide, 77 Fed. Reg. 48,756 (Aug. 14, 2012) ................................................................38

## STATEMENT OF RELATED CASES

No other appeal in or from the same civil action was previously before this Court or any other appellate court.  The Court's decision in this appeal may affect *Google LLC v. Sonos, Inc.*, No. 20-cv-03845 (N.D. Cal.).

# INTRODUCTION

Wireless networks are used to send messages back and forth across multiple devices. If two devices on the same network transmit a message at the same time, the signals that carry the messages may collide. And if the signals collide, the messages may be corrupted or garbled. To avoid this issue, designers of wireless devices have long included techniques to avoid signal collisions.

Google's U.S. Patent No. 10,229,586 (the '586 patent) claims a conventional "audio-enabled wireless device" that can relay messages across a wireless network, and its dependent claims add well-known collision avoidance techniques to that device. The Board found the independent claims unpatentable as obvious over the Baker reference, alone or in combination with the Bruckert reference. Google does not challenge that finding on appeal.

The dependent claims of the '586 patent add only well-known collision avoidance techniques to the conventional device described by the independent claims. This makes for a textbook obviousness case. Accordingly, the Board also found the dependent claims relating to

collision avoidance techniques (2-4, 7, 10-12, 16, 18, and 20) obvious in view of the combination of Baker, Bruckert, and McMillin.

The Board supported its obviousness conclusion with substantial evidence: Baker and McMillin describe substantially similar wireless networks and devices that communicate across those networks; McMillin identifies the problem of collisions in networks like Baker's; McMillin teaches collision avoidance techniques that would improve communications over a network like Baker's; the collision avoidance techniques taught by McMillin are the same as those claimed in the '586 patent. Thus, the collision avoidance techniques in the '586 patent are obvious over the combination of Baker, Bruckert, and McMillin.

Google accepts nearly all of the Board's findings undergirding that conclusion. Namely, Google concedes that the prior art discloses each limitation of every independent claim. And Google does not dispute that McMillin, which discloses the use of a random delay value to avoid collisions in a wireless mesh network, teaches all remaining limitations in the dependent claims at issue in this appeal. Google also does not dispute that a person of skill in the art would have found it desirable, and had a reasonable expectation of success, to integrate McMillin's

collision avoidance technique with the wireless mesh network of Baker/Bruckert because doing so would reduce the risk of message collision, garbling, and corruption.

So what's left? Google's appeal hinges on, in the Board's words, a "challenge [to] the length of [Sonos's] argument rather than its substance." Appx26. Google attempts to fault the Board for relying on a "generic" motivation to combine instead of separately analyzing motivation to combine for each limitation found in claims 3, 4, 11, 12, and 20. But Sonos, its expert, and the Board amply explained why a person of ordinary skill would be motivated to combine these references: "the close similarity between Baker and McMillin, along with the advantages in combining these references that Petitioner enumerates, persuasively shows that one of ordinary skill in the art would have combined these references to produce the recited claims." Appx26. The Board did not need to repeat its explanation for each claim, particularly because Google did not offer separate arguments for individual claim limitations. Google's contrary approach—which would require courts to finely parse motivations to combine for each claim limitation—is squarely foreclosed by Supreme Court and Federal Circuit precedent.

At bottom, the Board found—and Google does not dispute—that a known technique (McMillin's use of a random delay value to avoid collisions) had been used to improve one system (a wireless mesh network and devices communicating across the network), and that a person of ordinary skill would have recognized that the technique would improve a similar system (the Baker/Bruckert wireless mesh network and devices communicating across it) in the same way (reducing the risk of message collision, garbling, and corruption). The Board provided sufficient reasoning for its finding of a motivation to combine.

If the Court sustains the Board's reasoning as to the Baker/Bruckert/McMillin combination, it may affirm the Board without reaching Google's challenge relating to the Marman/Shoemake combination. In that challenge, Google contends that the Board's finding that claim 3 is patentable over Marman and Shoemake is inconsistent with the Board's obviousness findings for claims 4, 11, 12, and 20. But Google never argued—prior to the oral hearing before the Board—that its argument as to claim 3 also applied to claims 11, 12, and 20. The Board thus correctly determined that Google had not

separately argued the patentability of claims 11, 12, and 20. Google has not shown an abuse of discretion in the Board's determination.

This Court should affirm the Board's decision.

## STATEMENT OF THE ISSUES

1. Whether substantial evidence supports the Board's finding that a person of ordinary skill in the art would be motivated to combine Baker and Bruckert, which disclose devices operating on a wireless mesh network, with McMillin, which discloses techniques that address the problem of message collision in wireless mesh networks, to arrive at the challenged claims.

2. Whether Google has shown an abuse of discretion in the Board's determination that Google did not separately argue the patentability of claims other than claim 3 over the combination of Marman and Shoemake.

## STATEMENT OF THE CASE

***Baker and McMillin disclosed wireless mesh networks in the early 2000s.***

Since the late 1960s and early 1970s, wireless devices (sometimes called "nodes") digitally communicated with each other over wireless networks by sending and receiving messages carried by wireless

signals.  Appx1073-Appx1076.  Wireless *mesh* networks emerged in the

late 1990s and early 2000s.  Appx1082.  Unlike prior network

architectures, mesh networks allow messages to travel not just directly

between a sender and the intended recipient, but also allow

intermediary nodes in the network to forward along messages intended

for another recipient.  Appx1082-Appx1084.



Figure 3a

Figure 3b

The wireless mesh network illustrated above is from U.S.

Publication No. 2006/0120433A1 to Baker.  Baker teaches "networks of

6

communication devices," Appx1242, ¶ 0001, that are "configured for communication with one another," which form the network's "node[s]," Appx1244, ¶ 0026.  Each of the devices (nodes) include a "transceiver" facilitating "bidirectional communication," which "effectively allows the construction of virtual circuits within the network … between nodes." Appx1244, ¶¶ 0026-0027.  As shown in Fig. 3b, each node can send messages to another node, except nodes 350 and 356, which are out of range of one another (as indicated by the dashed line).  Appx1230; Appx1247, ¶ 0061.  If those nodes need to send messages to one another, the communication must be routed through other, intermediary, nodes on the network.  Appx1247, ¶ 0061.  Baker teaches various techniques for facilitating this node-to-node bidirectional communication.

Like Baker, U.S. Patent No. 7,027,773 ("McMillin") discloses a wireless mesh network.  McMillin's wireless mesh network "of intelligent transceiver nodes" employs "local processing and node-to-node data messaging to hand off messages from an origination point to a destination point."  Appx2222, 1:13-16.  The devices on McMillin's system employ "a reference frequency" to transmit messages amongst

7

themselves.  Appx2222, 2:26-27.  "Each of the nodes," McMillin teaches,

"comprises a transceiver receiving a message on the reference frequency

from another node and transmitting the received message on the

reference frequency to a subsequent node."  Appx2222, 2:28-31.  A

"controller" directs this chain of communication.  Appx2222, 2:32-34.

Consumer devices like stereos, cellphones, and desktop computers may

operate as transceivers in McMillin's network.  Appx2245, 48:10-14;

48:49-63.  A simplified sample network is shown below.  Appx2203.

## FIG. 6C



In wireless mesh systems like Baker and McMillin, the signal

contains the message itself, as well as information about the message's

sender and recipient.  The message is divided into packets, which are

then routed through the network and reassembled into the complete message at the destination.  Appx1073-Appx1074.  Baker, for example, discloses a packet structure that includes a preamble, addressing information, a data payload, and redundancy information that can be used to check for errors.  Appx1234.

### *Collision avoidance was a well-known technique for managing communications in wireless mesh networks.*

Message collision has long plagued wireless networks:  if two devices on a network transmit a message at the same time, then the packets carrying the messages will collide.  Appx1077.  This is no minor problem—when packets collide, the messages that are being carried may end up corrupted or garbled.  Appx2229, 16:64-65.  Since at least the 1970s, systems have mitigated this problem by having devices whose messages collided wait a random amount of time before resending; thus, avoiding another collision.  Appx1077.

McMillin provides an approach for avoiding collisions in wireless networks in the first place.  "[B]efore beginning the transmission" of a message, "the transceiver in the receive mode" determines whether "another message [is] being transmitted in the [transceiver's] vicinity."  Appx2229, 16:53-57.  And if it detects another message, then the

transceiver delays sending its message "by a randomly selected amount of time before attempting" to send again. Appx2229, 16:57-60. In this manner, McMillin "helps prevent the collision of two messages which could cause garbling of both messages or corruption of either or both messages." Appx2229, 16:63-65.

***The '586 patent claims a wireless mesh network with collision avoidance techniques.***

The '586 patent describes an ordinary wireless mesh network. The network facilitates bidirectional communication between sensors (like a smoke detector), repeater units that extend the system's range, and a centralized base station (like a computer), which can communicate with a consumer electronic device (like a cell phone or pager). Appx61, 1:38-39, 2:10-22. Figure 1, Appx54, illustrated below, provides a visual:



Like predecessor wireless mesh networks that feature
bidirectional communication between devices, the '586 patent
recognizes that collisions may occur.  *See, e.g.*, Appx64, 7:44-45, 8:04-06,
8:12-15.  To this end, it describes asynchronous signal transmissions,
Appx64, 8:14-19, where the repeater unit delays forwarding messages
for a random time period to reduce the likelihood of a collision, Appx66,
11:36-47.  The '586 patent claims a wireless device that can
communicate on a wireless mesh network, and certain dependent
claims add collision avoidance techniques.

Independent claim 1 and dependent claim 2 provide helpful
context for the claims that are at issue.  Beginning with claim 1, it

11

recites the elements of the '586 patent's wireless device and a specific

"communication packet" structure:

1. An audio-enabled wireless device configured for bidirectional wireless communication in a wireless mesh network, the wireless device comprising:

a wireless transceiver;

an audio output element;

a reset element; and

a controller operatively coupled to the wireless transceiver, the audio output element, and the reset element, the controller being configured to:

receive a communication packet using the wireless transceiver, the communication packet including a preamble portion, an identification portion, a data payload portion and an integrity portion;

compare at least the identification code portion of the received communication packet to a table of identifiers stored in the audio-enabled wireless device;

based on the comparison of the identification code portion of the received communication packet matching an entry in the table of identifiers stored in the audio-enabled wireless device, determine to relay the communication packet to another audio-enabled wireless device; and

relay the communication packet to the other audio-enabled wireless device.

Appx69, 17:23-46. Claim 2 recites one of the '586 patent's collision

avoidance techniques:

> 2. The audio-enabled wireless device of claim 1, the controller configured to:
>
> prior to the relay of the communication packet, listen to a radio frequency channel to determine the radio frequency channel is not in use by another device; and
>
> transmit, via the radio frequency channel, the communication packet.

Appx69, 17:47-53.

The claims that are at issue—3, 4, 11, 12, and 20—add limitations

to the '586 patent's collision avoidance techniques. Claim 3, for

example, provides:

> 3. The audio-enabled wireless device of claim 2, the controller configured to:
>
> prior to the transmission of the communication packet, determine a delay value; and
>
> wait the determined delay value before the transmission of the communication packet.

Appx69, 17:54-59.

Claims 4 and 12 provide that the "delay value is a random delay

value." Appx69, 17:60-61, 18:47-48. Claims 11 and 20, similar to claim

3, provide that the "audio-enabled wireless devices" "determine a delay

13

value," and "wait the determined delay value before the transmission of the one or more communication packets." Appx69, 18:42-46; Appx70, 20:18-24.

***Sonos seeks inter partes review of the '586 patent.***

Google acquired the parent patents to the '586 patent when Google purchased Nest Labs, a maker of smart home devices like smoke alarms and doorbells. After the '586 patent issued in 2019, Google sued Sonos for patent infringement in the Northern District of California. *Google LLC v. Sonos Inc.*, No. 3:20-cv-03845 (N.D. Cal., June 11, 2020). Sonos then sought inter partes review of claims 1-5, 7-12, 14-16, 18, and 20. Appx133-Appx134.

Sonos's petition raised three grounds of obviousness. Ground 1 explained that claims 1, 5, 8-9, and 14-15 are obvious over Baker and Bruckert.[1] Appx134. Ground 2 explained that claims 2-4, 7, 10-12, 16, 18, and 20 are obvious over Baker and Bruckert in further view of McMillin. Appx134. And Ground 3 explained that claims 1-5, 7-12, 14-16, 18, and 20 are obvious over Marman and Shoemake. Appx134.

---

[1] European Patent No. 0416732 B1. Google does not challenge any of the Board's findings as to Bruckert and, therefore, Bruckert's disclosure is not substantively relevant to this appeal.

As to Ground 1, Sonos explained that Baker alone (and together with Bruckert) renders obvious all of the independent claims. Appx160-Appx161. Baker's mesh network, like the '586 patent's, is formed from multiple consumer electronic devices with processors and transceivers to send and receive data signals. Appx161. The devices engage in bidirectional communication over different paths. Appx161-Appx174. Baker uses the same communications-packet structure claimed by the '586 patent. Appx170-Appx171. And Bruckert includes the reset functionality claimed by the '586 patent. Appx175-Appx177.

In Ground 2, Sonos explained that dependent claims 2-4, 7, 10-12, 16, 18, and 20 are obvious over Baker and Bruckert in view of McMillin. Appx179. "McMillin," Sonos explained, "teaches that a network can use the claimed techniques for purposes of avoiding transmission collisions." Appx179. In addition to the argument outlined in Ground 1, dependent claims 2-4, 7, 10-12, 16, 18, and 20 "add further limitations relating to packet transmission, including 'listen[ing]' to a 'frequency channel' to determine if it is 'in use' before transmission, and 'delay[ing]' transmission in certain circumstances." Appx179. Google did not object to Sonos's grouping of these claims, nor did it dispute that the

combination of Baker, Bruckert, and McMillin taught every element of those claims.  Appx23.

Sonos explained that McMillin disclosed claims 2, 10, and 18 because its system avoids signal collisions by listening to the network reference frequency to determine if another message is being sent.  Appx179-Appx181, Appx183.  Likewise, McMillin disclosed claims 3, 4, 11, 12, and 20 because after determining that another message is already being sent, McMillin waits a period of time before sending its message (i.e., delays a message transmission), thereby avoiding a collision.  Appx180, Appx182-Appx183.  What's more, McMillin delays the transmission for a "randomly selected amount of time."  Appx180, Appx182-Appx183.

Regarding claims 7 and 16, Sonos explained that they were disclosed by Baker and McMillin because Baker (implicitly) and McMillin (explicitly) explain that the wireless network should include a device that connects the network to the internet.  Appx181-Appx182.

Sonos next established that a person of ordinary skill in the art would be motivated to combine McMillin's, Baker's, and Bruckert's teachings to arrive at the challenged claims.  Appx183-Appx185.  Sonos

explained that McMillin teaches collision avoidance techniques to address the collision problem in networks like Baker's. Appx184. "Baker employs the same general type of network as McMillin," but does not expressly disclose how to avoid collisions, Sonos continued. Appx184. Thus, a person of ordinary skill would be motivated to combine Baker and McMillin to improve Baker's system because McMillin's collision avoidance techniques reduce "the risk of message collision, garbling, and corruption." Appx184.

Separate from Baker/Bruckert, in Ground 3, Sonos argued that claims 1-5, 7-12, 14-16, 18, and 20 are obvious over Marman and Shoemake. Appx185. Besides challenging Sonos's arguments on the independent claims, Google contested Sonos's arguments as to claims 3 and 5.

The Board agreed with Sonos's petition and instituted review of the '586 patent. Appx294.

***The Board invalidates all challenged claims.***

The Board found by a preponderance of evidence that claims 1-5, 7-12, 14-16, 18, and 20 are unpatentable. Appx41. As to the claims at issue here, the Board explained that Sonos:

> [P]rovides a detailed analysis explaining where the combination of Baker, Bruckert, and McMillin discloses the limitations in dependent claims 2-4, 7, 10-12, 16, 18, and 20. Petitioner supports its arguments with specific citations to Baker and McMillin and Dr. Wicker's declaration. Patent Owner does not dispute that the combination discloses all the elements of these dependent claims.

Appx23 (citations omitted). The Board concluded that "one of ordinary skill in the art would have combined these references to result in the subject matter of these dependent claims." Appx25. The Board made three findings to support its conclusion: (1) the "close similarity" between McMillin and Baker, (2) McMillin's "disclosure of 'collision avoidance techniques' to mitigate the problems with Baker's network," and (3) a skilled artisan would have understood that the McMillin-Baker combination would reduce the risk of message collision, garbling, and corruption. Appx26.

The Board explicitly rejected Google's argument that Sonos failed to articulate a motivation to combine. Appx24-Appx25. First, Google "conceded that the subject matter of some of these dependent claims generally relate[] to collision avoidance." Appx25. Second, Google had no substantive rebuttal to Sonos showing a motivation to combine based on McMillin's explicit disclosure of collision avoidance techniques "to mitigate the problems with Baker's network." Appx26. Google had

18

argued that Sonos "must quote each claim limitation when discussing a rationale to combine," but the Board rejected that argument as it has no legal support. Appx26. And ultimately, Google "effectively challenge[d] the length of [Sonos's] argument rather than its substance." Appx26. Because the Board saw "no problems with the substance of [Sonos's] argument," Appx26, and this case involved "simple and familiar" technology and clear prior art, Appx25, the Board found by "a preponderance of the evidence that dependent claims 2-4, 7, 10-12, 16, 18, and 20 would have been obvious over the combination of Baker, Bruckert, and McMillin," Appx27.[2]

The Board found for Google on one argument. It agreed with Google that claim 3 had not been shown to be obvious over Marman and Shoemake. On the other dependent claims, the Board found that Google did not "offer separate arguments … or contest [Sonos's] analysis." Appx37. The Board thus found claims 1, 2, 4, 5, 7-12, 14-16, 18, and 20 unpatentable, and claim 3 not unpatentable, over Marman and Shoemake.

_____

[2] Google did not argue that any "secondary considerations" were relevant to the obviousness analysis. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007).

## SUMMARY OF ARGUMENT

The Board's fact findings compel affirmance of the Board's decision. The Board found—and Google does not dispute—that a person of skill would have recognized that integrating McMillin with Baker/Bruckert's wireless mesh network had the benefit of reduced message collision, garbling, and corruption. That motivation more than suffices for all claims at issue.

Google's contrary approach—which would require the Board to explain why a person of ordinary skill "would have made the specific proposed combinations mandated by each of the dependent claims," Appellant's Opening Brief ("OB") 24—runs headlong into Supreme Court and Federal Circuit case law. As *KSR* explains, a motivation to combine "need not seek out precise teachings directed to the specific subject matter of [each] challenged claim." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 415, 418 (2007); *see also Gen. Elec. Co. v. Raytheon Techs. Corp.*, 983 F.3d 1334, 1352 (Fed. Cir. 2020) (parties "need [not] show [a] motivation to combine each element of [a] claim"). Likewise, this Court has confirmed that considerations like being "stronger, cheaper, cleaner, faster, lighter, smaller, more durable, or more efficient" are all

20

adequate motivations to combine. *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 784, 797 (Fed. Cir. 2021) (quoting *DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.*, 464 F.3d 1356, 1368 (Fed. Cir. 2006)).

Google also contends that the Board's finding that claim 3 was not unpatentable over Marman and Shoemake means claims 11, 12, and 20 must also be. The Court need not address this argument because substantial evidence supports the Board's finding that the challenged claims are obvious over the Baker/Bruckert/McMillin combination. Regardless, Google did not present this argument to the Board when it should have—in its Patent Owner Response. Google's Patent Owner Response and accompanying expert declaration provides no hint that the argument Google made for claim 3 also applied to claims 11, 12, and 20. Knowing this, Google grabs onto its remarks in the final minutes of the oral argument before the Board. But even assuming Google's cursory remarks were sufficient to raise the issue, doing so at that late stage was untimely. Google has shown no abuse of discretion in the Board's finding that Google did "not offer separate arguments" for claims 11, 12, and 20. Appx22.

21

## STANDARD OF REVIEW

This Court reviews the Board's legal conclusions de novo and its factual findings for substantial evidence. *Meiresonne v. Google, Inc.*, 849 F.3d 1379, 1382 (Fed. Cir. 2017). The Board's determinations as to forfeiture are reviewed for an abuse of discretion. *Driessen v. Best Buy Co.*, No. 2022-1907, 2023 WL 2422441, at \*2 (Fed. Cir. Mar. 9, 2023) (citing *Dell Inc. v. Acceleron, LLC*, 884 F.3d 1364, 1369-70 (Fed. Cir. 2018)).

Obviousness is a question of law based on underlying factual findings. Factual findings include "what a reference teaches, whether a person of ordinary skill in the art would have been motivated to combine references, and any relevant objective indicia of nonobviousness." *Steuben Foods, Inc. v. Nestle USA, Inc.*, 884 F.3d 1352, 1355 (Fed. Cir. 2018).

"A finding is supported by substantial evidence if a reasonable mind might accept the evidence to support the finding." *Genentech, Inc. v. Hospira, Inc.*, 946 F.3d 1333, 1337 (Fed. Cir. 2020) (citing *Consol. Edison Co. of N.Y., Inc. v. NLRB*, 305 U.S. 197, 229 (1938)). "[W]here two different, inconsistent conclusions may reasonably be drawn from

22

the evidence in the record, an agency's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence." *In re Jolley*, 308 F.3d 1317, 1329 (Fed. Cir. 2002). Under the substantial evidence standard, the appellant's burden on appeal is "a challenging one." *Leo Pharm. Prods., Ltd. v. Rea*, 726 F.3d 1346, 1348 (Fed. Cir. 2013).

## ARGUMENT

**I.    The Board's finding that dependent claims 3, 4, 11, 12, and 20 are obvious over the Baker, Bruckert, and McMillian combination is supported by substantial evidence.**

For nearly three-quarters of a century, the Supreme Court has recognized that a "patent for a combination which only unites old elements with no change in their respective functions" is obvious and therefore unpatentable. *Great Atl. & Pac. Tea Co. v. Supermarket Equip. Corp.*, 340 U.S. 147, 152-53 (1950); *see also* 35 U.S.C. § 103. One way that a patent "can be proved obvious is by noting that there existed at the time of invention a known problem for which there was an obvious solution encompassed by the patent's claims." *KSR*, 550 U.S. at 419-20. Because "in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle,"

it will "[o]ften … be necessary for a court to look to interrelated teachings of multiple patents" to ascertain "whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue." *Id.* at 418, 420. If "a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious." *Id.* at 417.

The parties agree on nearly every aspect of how these precepts apply to the facts of this case. Google does not challenge several holdings underpinning the Board's determination that claims 3, 4, 11, 12, and 20 are obvious over the combination of Baker, Bruckert, and McMillin, including:

- Baker alone, and Baker in combination with Bruckert, teach a wireless home network comprised of consumer electronic devices, which can communicate with each other by sending digital signals. Appx22 ("Patent Owner does not … contest Petitioner's analysis"); Appx1122-Appx1142, Appx1145-Appx1148.

- Independent claims 1, 9, and 15 are obvious over Baker alone, or the combination of Baker and Bruckert. Appx9, Appx14, Appx22.

- The "combination [of Baker, Bruckert, and McMillin] discloses all the elements of these dependent claims" (2-4, 7,

10-12, 16, 18, and 20), which relate to avoiding collisions in a wireless home network. Appx23.

- The wireless mesh network disclosed in Baker is subject to the very collision problem that McMillin recognizes and addresses. Appx24.

- McMillin teaches using delays in transmission to avoid message collision, which prevents garbling and corruption of messages. Appx23-Appx24.

- A person of ordinary skill in the art would have understood that Baker's system could be improved by applying McMillin's collision avoidance techniques. Appx24.

- A skilled artisan would have a reasonable expectation of success in applying to the network disclosed in Baker the collision avoidance techniques taught by McMillin. Appx24, Appx26.

It follows from these undisputed Board findings that "dependent claims 2-4, 7, 10-12, 16, 18, and 20 would have been obvious over the combination." Appx27. Indeed, as *KSR* instructs, "if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious." 550 U.S. at 417.

So what exactly does Google dispute? Just one thing. Google argues that there is not substantial evidence to support the Board's finding that a person of skill in the art would have been motivated to

combine Baker, Bruckert, and McMillin to arrive at dependent claims 3, 4, 11, 12, and 20.  OB22.

What makes this assertion so curious is that Google does not challenge the Board's determination that a person of ordinary skill would have been motivated to combine Baker, Bruckert, and McMillin to reach claims 2, 10, and 18 (hereafter "unchallenged dependent claims").  Like the challenged claims, the unchallenged dependent claims apply McMillin's collision avoidance techniques to the Baker/Bruckert network.  Given these similarities, one would expect Google to supply some critical distinction between the challenged claims—which use a delay value to avoid collisions—and the unchallenged dependent claims that would explain why the latter are obvious but the former are not.  But Google never spells it out.  The closest it comes is to argue that the Board's motivation to combine analysis is overly "generic" because it is "untethered to the specific language of the delay value claims."  OB22.

The Supreme Court rejected this line of argument when it observed that the motivation to combine "analysis need not seek out precise teachings directed to the specific subject matter of the

challenged claim, for a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ." *KSR*, 550 U.S. at 418; *see also Ruiz v. A.B. Chance Co.*, 357 F.3d 1270, 1276 (Fed. Cir. 2004) (court "may find a motivation to combine prior art references in the nature of the problem to be solved"). Moreover, Google's insistence that a separate motivation to combine be supplied for each claim limitation smacks of the very formalism that *KSR* rejected. *KSR*, 550 U.S. at 415; *see also id.* at 419 (denouncing "formalistic conception" of obviousness analysis).

In any event, Sonos and the Board did explain why a person of ordinary skill would have been motivated to combine the prior art to arrive at the claimed invention: "McMillin identifies the problem of message collisions when two devices transmit simultaneously," and provides "techniques [to] address this problem" in the exact type of network as Baker. Appx23-Appx24; *see also* Appx26 ("Petitioner explicitly relies on McMillin's disclosure of 'collision avoidance techniques' to mitigate the problems with Baker's network."). The Board credited Sonos's expert, Dr. Wicker, who explained "that the close similarity between Baker and McMillin, along with the advantages in

27

combining these references that Petitioner enumerates, persuasively shows that one of ordinary skill in the art would have combined these references to produce the recited claims." Appx26; *see also* Appx23-Appx24 (summarizing advantages enumerated by Sonos).

Google's suggestion that the Board's analysis is too "generalized" to articulate a motivation to combine for the challenged claims (OB23) is likewise unsupported by the case law. For example, in *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 784, 797-99 (Fed. Cir. 2021), the Court reversed a Board finding of nonobviousness, holding that the desire for increased energy efficiency was not too "generic" to serve as a motivation to combine prior art. And the Court has endorsed motivations like the desire to make a product "stronger, cheaper, cleaner, faster, lighter, smaller, more durable, or more efficient" as legitimate "technology-independent" motivations to combine prior art references. *DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.*, 464 F.3d 1356, 1368 (Fed. Cir. 2006). Here, a person of ordinary skill would be motivated to improve Baker by adding collision avoidance, thus making Baker's network more reliable.

The facts of *KSR* itself are instructive. The patent at issue in *KSR* claimed an adjustable car pedal outfitted with a sensor that transmitted the pedal's position to the car's internal computer. *KSR*, 550 U.S. at 406. At the time of the invention, the prior art included: (1) various types of adjustable car pedals, (2) modular sensors that could be placed on car pedals, and (3) various types of adjustable car pedals that were outfitted with a sensor. *Id.* at 407-09. The claimed invention combined an adjustable pedal from the prior art with a sensor that was also disclosed in the prior art. *Id.* at 410. This, the Court held, was obvious given the clear advantages of being able to transmit a pedal's position to the car's computer. *Id.* at 424.

The Supreme Court did not—as Google now urges this Court to do—inquire whether the proffered motivation to combine the prior art references was sufficiently "[]tethered" to the "specific language of the claims." OB22-24. Just the opposite. The Court denounced the use of such "[r]igid preventative rules that deny factfinders recourse to common sense." *KSR*, 550 U.S. at 421. And there is no reason to reach a different result here, particularly given how similar this case is to *KSR*: Replace "adjustable car pedal" with "network," and swap

"collision avoidance techniques" for "sensor," and you have the facts of this case.

*In re Dance*, 160 F.3d 1339 (Fed. Cir. 1998), is also on point. That case involved a patent for a catheter that breaks down debris obstructing a blood vessel and then later extracts the broken-up debris. The prior art included (1) a nearly identical catheter that breaks apart debris but does not extract it, and (2) a slightly different catheter that both breaks apart *and* extracts debris. The patent-in-suit simply applied the debris extraction function from (2) to the catheter disclosed in (1). *Id.* at 1340-42. This Court held that the claimed invention was obvious given the "expressly stated advantage of enabling" the extraction of debris. *Id.* at 1343. No further analysis was required to determine that a person of ordinary skill would have been motivated to combine the prior art references.

Google's contrary approach would effectively require courts to "unduly dissect[]"prior art references and supply individualized motivations to combine tailored to each claim limitation. *Gen. Elec.*, 983 F.3d at 1352. But the "claimed invention and an invention in the prior art must both be analyzed as a whole." *Id.* Parties accordingly

30

"need [not] show [a] motivation to combine *each element* of [a] claim."

*Id.* (emphasis added). Instead, a party simply needs to show a motivation to combine the references to arrive at the claimed invention.

Given that Google's position has already been roundly rejected by this Court and the Supreme Court, it is little surprise that none of the cases it cites are apposite. Take, for example, *Innogenetics, N.V. v. Abbott Laboratories*, 512 F.3d 1363 (Fed. Cir. 2008) (OB 24) and *Metalcraft of Mayville, Inc. v. Toro Co.*, 848 F.3d 1358 (Fed. Cir. 2017) (OB22, 24, 26). Google cites these cases for the proposition that "knowledge of a problem and motivation to solve it are entirely different from [a] motivation to combine particular references to reach the particular claimed method." OB24 (quoting *Innogenetics*, 512 F.3d at 1373). But that holding is not implicated by the facts of this case.

In *Innogenetics*, this Court held that an expert's conclusory testimony that a prior art reference *identified* a problem was not sufficient to show a motivation to combine references that taught how to *solve* the problem. *Innogenetics*, 512 F.3d at 1373. Here, by contrast, it is undisputed that McMillin both identifies *and* solves the problem of message collision on a network that is substantially similar to the

31

Baker network.  Appx24.  Specifically, McMillin identifies the problem of message collision: "it is possible that two [] devices may transmit simultaneously causing a collision of messages."  Appx2229, 16:46-47. And McMillin solves that problem by delaying the transmission of a message "by a randomly selected amount of time," thus helping to "reduce[] wireless traffic," "prevent the collision of two messages," and prevent "garbling" and "corruption of either or both messages." Appx2222, 2:05-17; Appx2229, 16:58-60, 16:63-65.  The Board also found, and Google does not challenge, that there is a "close similarity between Baker and McMillin," such that a person of ordinary skill would have understood that Baker is subject to, and could be improved by, McMillin's collision avoidance techniques.  Appx24, Appx26; Appx1156-Appx1158.

*Metalcraft* is even further afield (OB22, 24, 26).  In that case—an appeal from the grant of a preliminary injunction—this Court held that the district court did not clearly err by rejecting a claim of obviousness where there was "no explanation or reasoning" whatsoever "provide[d]" for why a person of ordinary skill would combine the prior art references.  848 F.3d at 1367.  *Comcast* suffered the same flaw; the

32

Board found there was no "explanation as to *how* or *why* the reference would be combined to produce the claimed invention." *Comcast Cable Commc'ns, LLC v. Promptu Sys. Corp.*, 838 F. App'x 555, 557 (Fed. Cir.), *cert. denied*, 141 S. Ct. 2721 (2021). That is a far cry from the facts of this case, where McMillin itself provides the reason why a person of ordinary skill would use collision avoidance techniques, including random delay values, to improve a mesh network like Baker. *Supra* 24-25, 27-28.

*TQ Delta, LLC v. Cisco Systems, Inc.*, 942 F.3d 1352 (Fed. Cir. 2019) (OB22) is equally unavailing. In that case, the Board's obviousness holding was based exclusively on expert testimony that was both entirely conclusory and failed to discuss key aspects of the relevant technology. *Id.* at 1362-63. Nothing of the sort has or could be alleged here. *Supra* 27-28.

Finally, *DSS Technology Management, Inc. v. Apple Inc.*, 885 F.3d 1367 (Fed. Cir. 2018) (OB25) and *Arendi S.A.R.L. v. Apple Inc.*, 832 F.3d 1355 (Fed. Cir. 2016) (OB27) address the entirely distinct circumstance where a finding of obviousness is made despite the prior art *not* teaching all of the elements of the claimed invention. *DSS*

33

*Tech.*, 885 F.3d at 1374-76 (discussing *Arendi*). Those cases held that a more fulsome explanation is typically necessary "to fill in a missing limitation." *Id.* at 1374. But they explicitly distinguished that scenario from cases such as this one, where "common sense is typically invoked to provide a known motivation to combine." *Id.* And in any event, the Board relied on far more than "common sense" in concluding that a person of ordinary skill would have a motivation to combine the relevant prior art references here. *Supra* 25-28.

The Board agreed with Sonos, and its expert, that given the "close similarity between Baker and McMillin" a person of ordinary skill would have understood that Baker's system could be improved in the *same way* as McMillin itself. Appx26. Quite simply, McMillin offered a blueprint to improve Baker, and a person of ordinary skill would be motivated to follow McMillin's blueprint by combining the two patents. The Board's conclusion—which covers all challenged claims in this appeal—is accordingly supported by substantial evidence and should be affirmed.

**II.    Google forfeited the argument that claims 11, 12, and 20 are patentable over the Marman/Shoemake combination.**

If the Court agrees with Sonos that substantial evidence supports the Board's finding that the challenged dependent claims are obvious over the Baker/Bruckert/McMillin combination, it may affirm on that basis alone and need not consider any other arguments. If this Court nevertheless opts to address Google's separate challenge to the Board's analysis of the Marman/Shoemake combination, the Court should reject it because it was forfeited below.

Google asserts that the Board erred in finding claims 4, 11, 12, and 20 unpatentable over Marman and Shoemake because the Board agreed with Google as to claim 3, which Google contends to be "substantively identical" to these other claims. OB28. Because claim 4 depends from claim 3, Sonos does not contest Google's argument that claim 4 is not obvious in view of the Board's finding on claim 3.

But Google's argument as to claims 11, 12, and 20 is untimely because, as the Board explained, Google did "not offer separate arguments," for these claims, "[n]or contest [Sonos's] analysis" for these claims. Appx37; *see also* Appx351-Appx352. Google has not shown an abuse of discretion in the Board's determination.

Time and time again, this Court has made clear that arguments—whether "meritorious or not"—that were never presented to the Board are forfeited on appeal. *See In re Google Tech. Holdings LLC*, 980 F.3d 858, 863 (Fed. Cir. 2020) ("We have regularly stated and applied the important principle that a position not presented in the tribunal under review will not be considered on appeal in the absence of exceptional circumstances."). While the Court "does not demand the incantation of particular words," it does require "that the lower court be fairly put on notice as to the substance of the issue." *Consolidation Coal Co. v. United States*, 351 F.3d 1374, 1378 (Fed. Cir. 2003).

Google did not timely provide the Board with notice that its arguments about the application of Marman and Shoemake to its claim 3 argument also applied to claims 11, 12, and 20.

In its Patent Owner Response, Google advanced four substantive arguments: (1) "Marman does not render obvious the claimed 'communication packet'"; (2) "[a] POSITA would not be motivated to combine Marman and Shoemake"; (3) "Marman and Shoemake do not render obvious the recitations of claim 3"; and (4) "Marman and Shoemake do not render obvious the recitations of claim 5." Appx338-

Appx353.  Of these arguments, the *only* arguments covering claims 11, 12, and 20 were Google's "communications packet" and motivation-to-combine arguments, which applied to all challenged claims.  Appx338-Appx347.  Google does not challenge the Board's rejection of those arguments.

Instead, Google attempts to stretch its claim 3 argument to reach claims 11, 12, and 20.  But the Patent Owner Response section on which Google relies never suggests that the argument applies to any claim besides claim 3.  Appx351-Appx352.  The title of Google's argument was "Marman and Shoemake do not render obvious the recitations of claim 3."  Appx351.  The argument itself recited claim 3 and contains no mention of claims 11, 12, or 20.  Appx351-Appx352; *see also* Appx5221-Appx5222 (Google's expert declaration) (same).  And nowhere in Google's briefing to the Board does Google equate claim 3 with claims 11, 12, or 20.  That explains the Board's determination in its Final Written Decision that Google neither "offer[ed] separate arguments" nor "contest[ed] [Sonos's] analysis" for claims 11, 12, and 20.  Appx37.

Hoping to evade the consequences of forfeiture, Google relies on comments it made in passing with two minutes left in the oral hearing.

OB28; Appx567-Appx569.  Moments after the Board noted that Google had two minutes remaining, Google's counsel stated that Google "ha[s] independent arguments" for "Claim 3, as well as its corresponding Claims 11 and 20."  Appx568.  Counsel continued, explaining: "I'd like to briefly go over what that secondary argument is for [the Marman and Shoemake combination] for Dependent Claim 3."  Appx568.  Counsel concluded by stating that "[a]nd so for that reason, petitioner also hasn't shown that the Dependent Claim 3 recitation, which again is in 11 and 20, is taught by Marman."  Appx569.

Not only was the Board *permitted* to disregard Google's belated attempt to rope other claims into its claim 3 argument at the oral hearing, it was *required* to.  The Patent Office's guidelines provide that "[a] party … may only present arguments relied upon in the papers previously submitted.  No new evidence or arguments may be presented at the oral argument."  Office Patent Trial Practice Guide, 77 Fed. Reg. 48,756, 48,768 (Aug. 14, 2012).  Unless the Board invokes its authority under 37 C.F.R. § 42.5(b) to review belated arguments, which it did not here, the Board is "obligated to dismiss" them.  *See Dell Inc. v. Acceleron, LLC*, 884 F.3d 1364, 1369 (Fed. Cir. 2018).  Google's

commentary in the final two minutes of the hearing was so superficial that it hardly provided the Board with *any* notice of the position Google now takes. But, even if it did, it would be the sort of new argument that the Board would be obligated to dismiss.

Nor did Sonos ever agree, contrary to Google's contention, "that the claims should rise or fall together." OB28. Instead, Sonos presented argument that claims 11, 12, and 20 were unpatentable and Google did not respond. The internal cross-references in Sonos's petition (which was written before Google even made its claim 3 argument) hardly constitute an agreement that Google's argument as to claim 3 applies to all of the other claims at issue.

The bottom line is that Google had the opportunity in its Patent Owner Response to argue its claim 3 argument also applied to claims 11, 12, and 20. Google failed to do so, and cursory comments during the oral hearing cannot undo that failure. Hence, the Board correctly found that Google did "not offer separate arguments for these claims or contest [Sonos's] analysis." Appx37. That was not an abuse of discretion. This Court's well-established rules on forfeiture foreclose Google's argument on appeal. *Cf. Cablz, Inc. v. Chums, Inc.*, 708 F.

App'x 1006, 1012 (Fed. Cir. 2017) (finding a patentee's argument on appeal forfeited when the patentee's "failure to brief the issue prior to the IPR oral hearing caused the Board to not explicitly address [that] argument."). The Board's decision that Marman and Shoemake render claims 11, 12, and 20 unpatentable should be upheld.

## CONCLUSION

For the foregoing reasons, the Court should affirm the Board's Final Written Decision in the -964 IPR.

July 10, 2023

Respectfully submitted,

/s/ Elizabeth R. Moulton

Mark S. Davies
Kufere Laing
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
1152 15th Street, NW
Washington, DC  20005

Elizabeth R. Moulton
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
405 Howard Street
San Francisco, CA  94105
(415) 773-5700

Alyssa M. Caridis
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
355 S. Grand Avenue, Suite 2700
Los Angeles, CA  90071

Parth Sagdeo
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
222 Berkeley St., Suite 2000
Boston, MA  02138

Emily W. Villano
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019

*Counsel for Appellee*

# CERTIFICATE OF COMPLIANCE

The brief complies with the type-volume limitation of Fed. Cir. R. 32(b)(1) because this brief contains 7142 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Century Schoolbook 14-point font.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Elizabeth R. Moulton*
Elizabeth R. Moulton
*Counsel for Appellee*